**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

| | |
|---|---|
| **AMERICAN ACADEMY OF IMPLANT DENTISTRY,** *and* <br><br> **EDWARD R. KUSEK, DDS,** <br><br> *Plaintiffs,* <br><br> v. <br><br> **MARTY JACKLEY,** *in his official capacity as the South Dakota Attorney General,* <br><br> **NICK RENEMANS, DDS,** *in his official capacity as the President of the South Dakota State Board of Dentistry,* <br><br> **SCOTT VAN DAM, DDS,** *in his official capacity as the Vice President of the South Dakota State Board of Dentistry,* <br><br> **ZONA HORNSTRA, RDH,** *in her official capacity as the Treasurer and Secretary of the South Dakota State Board of Dentistry, and* <br><br> **HAROLD DOERR, DDS,** <br> **TARA SCHAACK, DDS,** *and* <br> **BRIAN PROUTY, DDS,** *in their official capacities as members of the South Dakota State Board of Dentistry,* <br><br> *Defendants.* | Case No. <u>   4:23-cv-4113   </u> |

---

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

---

Through counsel, Plaintiffs—the American Academy of Implant Dentistry ("AAID") and

South Dakota dentist Dr. Edward R. Kusek—allege as follows for their complaint against the

Defendants, the South Dakota Attorney General, and the individual members of the South Dakota Board of Dentistry (the "Board"), in their official capacities:

## INTRODUCTION

1.      AAID is a national dental organization. Dentists, upon satisfying certain experiential, educational, and testing requirements, may earn credentials issued by AAID and its certifying board, the American Board of Oral Implantology/Implant Dentistry ("ABOI/ID"), in the field of implant dentistry. The highest certification a dentist can earn through the ABOI/ID is "Diplomate," which is the most rigorous, objectively verifiable credential that a dentist can earn in the field of implant dentistry.

2.      Dr. Kusek is a South Dakota dentist, AAID member, and ABOI/ID Diplomate. In other words, he is board-certified in implantology. This objectively verifiable credential provides consumers with important information concerning a dentist's confirmed competence in the field of implant dentistry.

3.      As a result, Dr. Kusek—like other similarly situated board-certified members of AAID in South Dakota—seeks to hold himself out and advertise himself as a specialist in implant dentistry. To do so would be truthful, not misleading, convey useful information to the public, and promote his practice.

4.      Such advertisements are commercial speech protected by the First Amendment to the United States Constitution.

5.      But South Dakota law and regulations as adopted and applied by the Defendants unconstitutionally bar the Plaintiffs from conveying this truthful information.

6.      The Defendants wrongfully limit the practice areas in which a dentist can advertise a specialty to only those practice areas recognized as specialties by the U.S. Department of

Education, which relies on the American Dental Association ("ADA") to certify specialty training programs.

7.      Though the Board has recently amended the specialty advertising rule, the new rule continues to unconstitutionally bar Dr. Kusek and other similarly situated AAID member dentists in South Dakota from referring to themselves as specialists unless they meet the Board's narrow definition.

8.      The State of South Dakota has a substantial interest in prohibiting false and misleading advertising. But the Defendants' purported prohibition on truthfully advertising specialization in implantology when a dentist has achieved board certification by a bona fide dental organization, like AAID and ABOI/ID, does not directly and materially advance the State's substantial interest. Indeed, it does not advance it at all, but instead denies the public important and accurate information. Moreover, the State of South Dakota's regulatory structure, as enacted and applied by Defendants, is not narrowly tailored as required by a litany of cases on this issue.

9.      Because the Board's restrictions on dental specialty advertising violate both the First and Fourteenth Amendments and impede the Plaintiffs' ability to carry out their business and, in the case of the individual plaintiffs and other similarly situated AAID members, truthfully advertise their services to the public, the Plaintiffs ask this Court to enjoin the Defendants from enforcing South Dakota's current and amended restrictions on specialty advertising.

**PARTIES**

10.      Plaintiff AAID is a national dental organization dedicated to supporting and educating dentists performing dental implant procedures. AAID is a not-for-profit organization incorporated in the State of Minnesota with its principal place of business in Illinois.

11.      Plaintiff Edward R. Kusek, DDS, is a resident of Sioux Falls, South Dakota, and a

licensed dentist in the State. As an AAID Diplomate, he is also a board-certified specialist in implant dentistry.

12.    Defendant Marty Jackley is a resident of Pierre, South Dakota. He currently serves as Attorney General for the State of South Dakota. Plaintiffs bring this action against him only in his official capacity.

13.    Defendant Nick Renemans, DDS, is a resident of Pierre, South Dakota, and a licensed dentist in the State. He currently serves as the President of the Board.

14.    Defendant Scott Van Dam, DDS, is a resident of Rapid City, South Dakota, and a licensed dentist in the State. He currently serves as the Vice President of the Board.

15.    Defendant Zona Hornstra, RDH, is a resident of Sioux Falls, South Dakota, and a registered dental hygienist in the State. She currently serves as the Board's Secretary and Treasurer.

16.    Defendant Harold Doerr, DDS, is a resident of Rapid City, South Dakota, and a registered dentist in the State. He currently serves as a member of the Board.

17.    Defendant Tara Schaak, DDS, is a resident of Rapid City, South Dakota, and a registered dentist in the State. She currently serves as a member of the Board.

18.    Defendant Brian Prouty, DDS, is a resident of Watertown, South Dakota, and a registered dentist in the State. He currently serves as a member of the Board.

19.    The Plaintiffs have sued each of the Defendants listed in ¶¶ 12–18 only in their official capacities as officers or members of the Board. For the sake of simplicity, the remainder of this Complaint will refer generically to the "Board" when describing the facts underlying the Plaintiffs' claim for relief. When it does so, those allegations should be read as if they are made against each of these Defendants, acting individually or collectively, in their official capacities.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because AAID's claims all arise under the Constitution, laws, and treaties of the United States.

21.     This Court also has jurisdiction under 28 U.S.C. § 1343(a) because AAID alleges that the Board's specialty advertising rule deprives them of their rights under the Constitution of the United States under color of state law.

22.     This Court is the proper venue for this action under 28 U.S.C. § 1391(b)(1) because all the Defendants reside in this district and Defendant Hornstra resides in the Southern Division.

## BACKGROUND

### *AAID Provides Education and Certification in Implant Dentistry, a Complex and Distinct Field of Dentistry*

23.     Implantology, or implant dentistry, involves the surgical placement of artificial posts in the jawbone, which anchor replacement teeth or bridges. It is a multidisciplinary field involving elements of dental surgery, prosthetics, periodontics, occlusion, pain management, anatomy, physiology, pathology, and dental facial aesthetics.

24.     Implants offer certain advantages over other alternatives (like dentures), but not all patients are candidates for implants, and implant surgery can lead to serious complications.

25.     AAID has promoted the field of implant dentistry through education, training, and research for almost 70 years, including by issuing credentials—through its certifying board, ABOI/ID—to dentists who meet rigorous educational requirements.

26.     ABOI/ID is accredited by the American Board of Dental Specialties ("ABDS"), an independent specialty certifying entity not controlled by the ADA or any other professional organization representing any specific area of dentistry.

27.     AAID provides a critical service to dentists around the country by providing

training, educational materials, and other support for those interested in performing implant procedures.

28.     AAID raises funds to support its operations and programs primarily through membership dues, conference fees, and tuition paid by dentists related to its educational programs.

29.     AAID's member dentists, upon satisfying certain experiential, educational, and testing requirements, may earn credentials issued by AAID and ABOI/ID.

30.     The entry-level of credentials offered is the "Associate Fellow" credential. A dentist can become an "Associate Fellow" by, among other things, (1) completing at least 300 hours of postdoctoral or continuing education in implant dentistry, at least 75 hours of which are participatory; and (2) successfully completing AAID's required two-part examination. One can also earn Associate Fellow credentials through the completion of a two-year post-graduate training program in implant dentistry that meets the standards of advanced education in oral implantology.

31.     The next highest level of credentials is the "Fellow" credential. A dentist can become a "Fellow" by, among other things, (1) completing at least 400 hours of postdoctoral or continuing education related to implant dentistry; (2) gaining at least five years of experience in implant dentistry; (3) successfully completing AAID's required examinations; (4) completing at least 5 cases of advanced dental implant treatment; and (5) participating in a specified number of AAID events. Similarly, one can earn Fellow credentials by passing the ABOI/ID Diplomate examination.

32.     The highest level of credentials is certification as a "Diplomate" by the ABOI/ID. The Diplomate credential issued by ABOI/ID is the most rigorous, objectively verifiable credential that a dentist can earn in the field of implant dentistry. Membership in the AAID is not a requirement for ABOI/ID certification.

33.     To be recognized as a "Diplomate," a dentist must, in most cases, have either completed 670 hours of verified continuing education specific to implant dentistry or a residency training program in oral surgery, prosthodontics, periodontics, and implant dentistry. Once a practitioner satisfies the educational requirement, the practitioner must then take and pass a comprehensive 200-question written examination and oral examination covering both standardized implant cases developed by the ABOI/ID as well as submit eight implant-dentistry cases to ABOI/ID for clinical review in specific areas of implant dentistry. Upon successful completion of the multi-phased examination, the practitioner is awarded an eight-year time-limited Diplomate certificate. In order to recertify Diplomate status, the practitioner must attest to completing 160 hours of implant dentistry specific continuing education over the previous eight years.

34.     Nationally, AAID currently has approximately 3,650 active Fellows. ABOI/ID began issuing credentials in 1989, and there are currently 619 active Diplomates.

35.     In total, AAID has 25 active members in South Dakota. So far, at least 4 South Dakota dentists have earned or completed the necessary education and training requirements to become Diplomates and 3 have become Fellows.

36.     While dentists do not all complete their required postdoctoral or continuing education through AAID programs, many use AAID "Maxicourses®" (comprehensive training programs requiring more than 300 hours of work), conferences, and district meetings to complete requirements necessary to become a Diplomate, Fellow, or Associate Fellow. They must pay various conference and registration fees for each of these events, as well as to take AAID or ABOI/ID's required exams.

37.     If a dentist were to complete all 670 hours of training or professional education

through AAID programs, the total cost of becoming a Diplomate would likely exceed $50,000 (though prices fluctuate).

38.     It is not possible for AAID to provide a definitive estimate of what the cost would be for dentists who complete some of their requirements through programs or conferences run by other organizations. But on information and belief, AAID believes the cost would be comparable to the cost of receiving training through AAID.

39.     In addition to the monetary cost, whether through AAID or otherwise, dentists seeking certifications expend time that they would otherwise devote to treating patients (and earning money in the process), managing their practice, and spending time with their families.

40.     AAID brings this action both on its own behalf and as the associational representative of its South Dakota members who wish to advertise as specialists in implant dentistry and as board-certified in implantology.

41.     On information and belief, Dentists are less likely to seek membership in AAID and certification by the ABOI/ID if they cannot truthfully advertise a specialization in implant dentistry once they achieve that certification.

### *Dr. Kusek Has Extensive Implantology Experience*

42.     Plaintiff Dr. Kusek is a South Dakota dentist. He resides in Sioux Falls, South Dakota. Dr. Kusek has been licensed to practice dentistry in South Dakota since 1984.  He practices dentistry in Sioux Falls, South Dakota, and has no disciplinary history.

43.     Dr. Kusek has been providing implants as a dental service since 1987. He has been a credentialed AAID Fellow since 1995. He received ABOI/ID Diplomate status in 1999.

44.     A large percentage of Dr. Kusek's practice is comprised of implant dentistry.  For example, in the last two years, he has performed approximately 500 dental implant procedures.

45.     Dr. Kusek wishes to be recognized as a specialist and to advertise as a specialist in implant dentistry. He wishes to use terms like "specialist" and "specialize" in his advertisements and communications with the public, as well as related descriptions that may imply specialization like "board-certified in implantology by the American Board of Oral Implantology/Implant Dentistry."

46.     Dr. Kusek brings this action to protect his constitutional rights, to increase the provision of truthful, non-misleading information to consumers about the specialization in implant dentistry, and to improve the financial well-being of his dental practice. He and similarly situated AAID member–dentists face an imminent risk of irreparable injury unless the Court declares South Dakota's specialty-regulation scheme unconstitutional and grants Plaintiffs the injunctive relief they have requested.

### Powers and Duties of the Board and Attorney General

47.     The South Dakota Board of Dentistry is the state professional board charged with regulating the practice of dentistry and dental hygiene in South Dakota.

48.     Among other things, the Board is empowered to license dentists, make and enforce rules to regulate the practice of dentistry, and investigate and discipline licensees for unprofessional conduct. SDCL § 36-6A-14.

49.     South Dakota law requires that the Board be composed of seven members appointed by the Governor, five of whom must be dentists "in active practice in South Dakota for at least five years immediately preceding appointment." SDCL § 36-6A-1.1. One member must be "a lay person and a resident of [South Dakota] for at least five years." *Id.* And the last member must be a "dental hygienist in active practice in South Dakota" for at least five years. *Id.*

50.     Under SDCL § 36-6A-14, each member of the Board serves for a term of three

years and may serve no more than three consecutive full terms.

51.     Defendants Nick Renemans, Scott Van Dam, Zona Hornstra, Harold Doerr, Tara Schaak, and Brian Prouty are the current members of the Board.

52.     Collectively, these Defendants are responsible for implementing, administering, and enforcing South Dakota's laws governing dentists and dental hygienists. SDCL § 36-6A-14. That authority includes the power to discipline licensed dentists in South Dakota, *id.* §§ 36-6A-14(2), 36-6A-17, including the power to discipline such dentists for allegedly false or misleading advertising, *id.* § 36-6A-29. The members of the Board also are authorized to adopt regulations consistent with South Dakota's dental practice laws specifically including such rules as are necessary to carry out the ban on fraudulent or misleading advertising. It is ostensibly under this authority that the South Dakota Board has promulgated, and the Board and Attorney General enforce the restrictions on specialty advertising.

53.     By statute, Defendant Jackley and his assistant attorneys general are charged with prosecuting any alleged disciplinary violations brought by the Board. SDCL § 36-6A-17.

### *South Dakota's Advertising Rules Unconstitutionally Restrict Specialty Advertising*

54.     Under the Board's current regulations, no dentist may hold themselves out or advertise as a "specialist" unless "they have completed postdoctoral training which is recognized and approved by the American Dental Association Commission on Dental Accreditation." S.D. Admin. R. 20:43:04:01. Because it is the ADA's policy not to recognize additional specialty fields if the proposed new field is a subfield of an existing ADA-recognized specialty, the ADA (and therefore South Dakota) does not recognize implant dentistry as a specialty. It instead views it as a subfield of, among other things, periodontics, prosthodontics, and oral surgery.

55.     In June 2023, the Board held a hearing to consider new specialty advertising

restrictions.

56.    But even under the new version of S.D. Admin. R. 20:43:04:01 adopted by the Board, neither Dr. Kusek nor other ABOI/ID Diplomates will be able to advertise their specialties in implant dentistry.

57.    Rather, the new rule permits dentists to call themselves specialists only "for any specialty in which the dentist has completed a post-doctoral program that: (1) Consists of at least two full-time years; and (2) is accredited by an accreditation agency recognized by the United States Department of Education or is administered by a dental school accredited by an organization recognized by the United States Department of Education."

58.    The United States Department of Education relies on the ADA to determine which dental programs to recognize. Thus, the new rule, like the old one, allows specialization only in those fields recognized by the ADA.

59.    Indeed, the amended rule declares that truthfully informing "the public of a specialty practice or the inference of specialty status not authorized by section is engaging in false or misleading advertising." A dentist who engages in "false or misleading advertising" may be disciplined by the Board including the possibility of license suspension or even revocation.

60.    ABOI/ID's Diplomate certification process does not meet the new rule's State-selected definition of a "specialty." But dentists practicing in other fields—namely, those recognized by the ADA—can hold themselves out as specialists and gain professional advantages as a result.

61.    For example, several South Dakota-licensed oral surgeons testified in support of the new rule, under which they can hold themselves out as specialists in oral surgery. A review of those oral surgeons' websites reveals that the surgeons are referred to as "specialists" on several

pages and that the first service mentioned in their list of "services" is "dental implants."

62.     In fact, in a 2017 radio interview, one of the oral surgeons who testified relied heavily on his ability to call himself a specialist when explaining why patients should come to his practice for dental implants rather than that of a general dentist, saying: "I think that you're moving into 2018 and '19, *you're really going to need a specialist in dental implants to kind of get all the information that you need* to make a proper decision. We've talked about this before: if all you have is a hammer, everything is a nail. *Whereas, as board-certified oral surgeons, we know all the different parts of surgery* and all the different parts of grafting, so we can give our patients a good amount of information to make a decision on what kind of implant setup they want, what kind of bone grafting can they or should they or should not have. That's all part of the informed consent process, so that's the things I think people have to think about in 2018, 2019, 2020, moving forward. They just can't take everyone's word for it, like 'Oh, I'm going to get implants,' and then just do whatever so-and-so says. (emphasis added)."

63.     Yet, like its predecessor, this Board's new rule does not explain why South Dakota's general prohibition on false or misleading dental advertising is not sufficient to allow the Board to crack down on dentists who falsely claim a specialty or do so with grossly inadequate qualifications. *See* SDCL § 36-6A-59(13) ("The term unprofessional or dishonorable conduct, as used in the [South Dakota Dental Practice Act] includes . . . Engaging in false or misleading advertising or advertising of a dental business or dental services in which untruthful or improbable statements are made or which are calculated to mislead or deceive the public.").

64.     Nor does it explain why only *ADA-recognized* specialties should be able to reap the benefits of specialty advertising while ABOI/ID Diplomates are flatly prohibited from calling themselves specialists based on their implant-specific training.

65.     Over objections from Dr. Kusek, the AAID, and ABOI/ID, the Board voted to adopt this new regulation at its June 2023 hearing and sent it on to the State's Interim Rules Review Committee (the "Committee") for final review and approval under SDCL § 1-26-49.

66.     On July 18, 2023, the Committee held a hearing on the proposed rule to determine whether it should allow the rule to go into effect, revert the rule to the Board, or suspend the rule. SDCL §§ 1-26-4, 1-26-4.9.

67.     The Committee ultimately voted to allow the rule and Plaintiffs anticipate the Board will imminently file the rule with the Secretary of State. SDCL §§ 1-26-6, 1-26-8.

68.     Thus, under the new rule no dentist (including ABOI/ID Diplomates) in the State of South Dakota will be able to publish any advertisement or distribute any promotional materials describing themselves as a specialist in "implant dentistry," or any other field not currently recognized as a specialty by the Board unless they have completed a two-year post-doctoral program accredited by an accreditation agency recognized by the United States Department of Education. That is so regardless of the level of training or education they have received in implant dentistry or what proportion of their practice is devoted to that field.

69.     Under the Board's rules, *any* South Dakota-licensed dentist—regardless of their actual education, experience, or expertise in performing dental-implant services—can perform those services on patients and can advertise that they do so. Indeed, they could even practice implant dentistry exclusively.

### The Board Will Enforce Its Regulations Against AAID Members

70.     The Board, through its legal counsel, have affirmatively represented to AAID that it intends to enforce the new regulation against AAID credentialed and/or ABOI/ID certified dentists, like Dr. Kusek, who advertise themselves as specialists in implant dentistry based on their experience and ABOI/ID Diplomate status.

71.     AAID provided feedback on the Board's new rule, explaining how it (like the current rule) violates Dr. Kusek and other similarly situated South Dakota dentists' constitutional rights, as well as those of other dentists who hope to truthfully advertise a specialty without meeting the Board's overly narrow, State-mandated definition of the term.

72.     In response, the Board's counsel provided AAID with a six-page legal brief explaining how AAID-credentialed and/or ABOI/ID certified specialists would be violating the new rule and purporting to provide a legal justification for doing so. Indeed, the brief mentions Dr. Kusek by name, recognizing that he might sue the Board to vindicate his constitutional rights. (Indeed, even the Board's legal brief acknowledges that there may have been constitutional issues with the old rule and suggests that the new rule is intended to remedy any potential deficiency.)

73.     The brief then devotes three pages to explaining why AAID's credentials and ABOI/ID's certification process do not meet the Board's new definition.

74.     Notably, the Board's new rule is broader than the current specialty advertising restriction, so there can be no doubt that the Board would also prosecute Dr. Kusek and other similarly situated South Dakota dentists under the current rule if they were to truthfully hold themselves out as specialists in implant dentistry.

75.     Thus, Dr. Kusek and any other similarly situated South Dakota dentists are currently prohibited from holding themselves out as specialists in implant dentistry based on their

experience and AAID or ABOI/ID-issued credentials. The Board's continued focus on this issue, apparent determination to protect the specialty-advertising bar from potential constitutional challenges, and specific focus on both AAID and Dr. Kusek in their legal brief all demonstrate there is an imminent risk that the Board will take enforcement action against any AAID-credentialed or ABOID/ID-certified dentist (including Dr. Kusek) should they advertise a specialty in implant dentistry.

### *The Board's Advertising Restrictions Impede Plaintiff's Ability to Carry Out Their Lawful Businesses*

76.     But for the current and Board-approved specialty-advertising rules described above, and the risk of an enforcement action based on those rules, Dr. Kusek would advertise himself as a specialist in implant dentistry based on his experience and AAID credentials and ABOI/ID Diplomate status.

77.     Dr. Kusek has refrained from doing so because of a realistic threat and fear of imminent enforcement action from the Board were he to truthfully advertise himself as a specialist in implant dentistry based on bona fide credentials.

78.     Upon information and belief, Dr. Kusek would have been able to attract more implant-dentistry patients if he were able to truthfully advertise himself as a specialist in implant dentistry. Because he cannot, Dr. Kusek has lost out on potential patients as well as the revenue those patients would have brought to his practice.

79.     Upon information and belief, some of these patients have turned to oral surgeons like those who testified in support of the new regulation or other dentists practicing in ADA-recognized specialties in reliance on their ability to hold themselves out as "specialists" in oral surgery.

80.     For its part, as discussed above, AAID's revenue is substantially based on the fees

received from conference and training tuition and the fees associated with certification exams and procedures in credentialing specialists in implant dentistry.

81.     Upon information and belief, one of the major reasons dentists seek training and credentials in implant dentistry is the ability to advertise the resulting specialized knowledge and credentials to attract patients.

82.     Advertising restrictions like South Dakota's current and Board-approved dental-specialty-advertising rule therefore substantially reduce the value and marketability of AAID's credentialing programs and educational offerings.

83.     Upon information and belief, but for the Board's specialty-advertising restrictions, more South Dakota dentists would attend AAID's programs, work to secure the necessary training and experience to obtain credentialing, seek credentials from AAID, and ABOI/ID certification.

84.     In addition to hampering AAID's organizational mission to support and advance the practice of implant dentistry, the Board's current and proposed rule thus directly, materially, and adversely impact AAID's interests.

85.     Moreover, the Board's rules infringe directly on the constitutional rights of Dr. Kusek and other similarly situated South Dakota dentists.

86.     Plaintiff AAID therefore brings this action on its own behalf. But it also brings it as the associational representative of its South Dakota members who wish to advertise as specialists in implant dentistry and as board-certified in implantology.

87.      It is currently unlawful for those members to do so. They risk loss of their constitutionally protected property interest in their dental licenses if they should truthfully advertise as specialists in implant dentistry or as board-certified in implantology.

88.     AAID brings this action so that these South Dakota members may truthfully

advertise in South Dakota as specialists in implant dentistry and as board-certified in implantology, and to protect their constitutional rights to disseminate truthful, non-misleading information to consumers about their own specialization in implant dentistry.

## COUNT 1: VIOLATION OF THE FIRST AMENDMENT
### 42 U.S.C. § 1983

89. Plaintiffs incorporate the allegations in paragraphs 1 through 88 as if restated here.

90. Title 42, Section 1983 of the United States Code permits any person or organization to file suit against any unit of State or local government that violates their rights under the United States Constitution.

91. The First Amendment to the United States Constitution, as incorporated against the States through the Fourteenth Amendment, forbids any State from passing any law or regulation that infringes on any citizen's freedom of speech.

92. That protection also extends to commercial speech.

93. Where commercial speech is truthful and not misleading, the State may regulate it *only* where the restriction (1) furthers a substantial governmental interest, (2) directly advances that interest, and (3) is not more restrictive than necessary. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). Neither the current nor the revised specialty-advertising rule at issue here meets any of these requirements.

94. To start, Dr. Kusek's speech is truthful and not misleading.

95. In ordinary parlance, a *specialty* is "a special pursuit, occupation, aptitude, or skill" and a *specialist* is "one who is devoted to a particular occupation or branch of study or research." *Specialty* and *Specialist*, Am. Heritage Dictionary of the Eng. Lang. (5th ed. 2011).

96. By both education and experience, Dr. Kusek meets this ordinary definition of a "specialist"—as does any ABOI/ID-certified Diplomate.

97.     The Board is not free, under the First Amendment, to impose its own definition of a "specialist" on these dentists and then penalize them for not agreeing with it.

98.     Beyond that, the Board's regulations do not serve any substantial governmental interest and certainly do not do so directly.

99.     While the Board will likely claim that the specialty-advertising regulation is intended to promote patient safety, the Board allows *any* dentist in South Dakota to perform implant dental procedures, regardless of whether they have any certification at all beyond their dental license. So even if the Board were concerned that procedures were being performed by under-qualified or inexperienced dentists, the specialty-advertising rule does not address that concern.

100.    In fact, the public is harmed by being denied access to truthful information allowing them to contrast the relative experience, certification, and training of various dentists in implant dentistry. Allowing Diplomates to advertise their specialty credentials would allow South Dakota patients to seek out more qualified implantology practitioners and avoid those with relatively little training or relevant experience. Thus, the Board's rule undermines rather than serves its purported public safety purpose.

101.    Furthermore, there is no evidence that ABOI/ID's Diplomate certification is handed out without a true examination of a dentist's qualifications, experience, or credentials. Any such assertion would be a falsehood.

102.    Nor can the Board establish that AAID-credentialed and ABOI/ID certified dentists are behind any rise in dental-implant complications.

103.    Finally, even if the Board's regulations did advance its purported interests, there are narrower means of pursuing the Board's interest, such as by enforcing South Dakota's generic

prohibition on false or misleading statements by dentists against those dentists who truly lack adequate qualifications or falsely claim to have credentials they lack.

104.     There is no need to deny the public access to admittedly truthful information to prevent them from making decisions *the Board* may believe are unwise.

105.     Both the current and proposed specialty-advertising restrictions, therefore, violate the First Amendment.

106.     Furthermore, as alleged in paragraphs 76 through 88 above, these regulations have and will materially and adversely impact Dr. Kusek's and AAID's interests and have precluded or deterred dentists from truthfully advertising their specialty in implant dentistry and AAID or ABOI/ID-issued credentials.

107.     The Plaintiffs are therefore entitled to declaratory and injunctive relief precluding future enforcement of these regulations.

COUNT 2: VIOLATION OF THE FOURTEENTH AMENDMENT
42 U.S.C. § 1983

108.     Plaintiffs incorporate the allegations in paragraphs 1 through 107 as if restated here.

109.     Title 42, Section 1983 of the United States Code permits any person or organization to file suit against any unit of State or local government that violates their rights under the United States Constitution.

110.     The Fourteenth Amendment's Equal Protection Clause precludes the Board from distinguishing between dentists who specialize in implant dentistry and any other dental specialist without a rational basis.

111.     Likewise, the Fourteenth Amendment's Due Process Clause and Privileges and Immunities Clause forbids the Board from infringing upon such dentists' pursuit of a lawful profession without a rational basis.

112.    There is no rational basis for the current or proposed specialty-advertising rules.

113.    Nor is there any rational basis for distinguishing between ABOI/ID Diplomates and specialists in ADA-recognized fields who are able to seek residencies through Department of Education certified academic programs.

114.    Moreover, as described in paragraphs 98 and 104 above, the rules do not further the Board's purported interests in patient safety and are dramatically overbroad.

115.    Both the current and proposed specialty-advertising restrictions, therefore, violate the Fourteenth Amendment.

116.    Furthermore, as alleged in paragraphs 76 through 88 above, these regulations have and will materially and adversely impact Dr. Kusek and AAID's interests and have precluded dentists from truthfully advertising their specialty in implant dentistry and AAID or ABOI/ID-issued credentials.

117.    The Plaintiffs are therefore entitled to declaratory and injunctive relief precluding future enforcement of these regulations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants, jointly and severally, granting Plaintiffs the following relief:

1.    A declaration under 28 U.S.C. § 2201 *et seq.* that the Board's current and amended specialty advertising rules prohibiting dentists specializing or board-certified in implant dentistry from truthfully holding themselves out as such specialists violates the First and Fourteenth Amendments to the United States Constitution;

2.    An injunction forbidding the Defendants and their successors in office from enforcing the current or amended specialty advertising rules, or any future regulation similarly

restricting dentists' ability to truthfully hold themselves out as specialists;

3.  An award of attorney's fees and costs under 42 U.S.C. § 1988; and

4.  All other relief that the Court may deem just and equitable.

Respectfully submitted,

/s/   Ronald A. Parsons, Jr.

Ronald A. Parsons Jr.
**JOHNSON JANKLOW & ABDALLAH LLP**
101 South Main Ave., Suite 100
Sioux Falls, SD 57104
Phone: (605)338-4304
ron@janklowabdallah.com

Justin C. Withrow (*pro hac pending*)
**FLANNERY | GEORGALIS LLC**
1375 East Ninth St., 30th Floor
Cleveland, OH 44114
Phone/Fax: (216) 367-2120
jwithrow@flannerygeorgalis.com

Colin J. Callahan (*pro hac pending*)
**FLANNERY | GEORGALIS LLC**
707 Grant Street, Ste. 2750
Pittsburgh, PA 15219
Phone/Fax: 412-339-1336
ccallahan@flannerygeorgalis.com

W. Benjamin Reese (*pro hac pending*)
**FLANNERY | GEORGALIS LLC**
175 South Third Street, Ste. 1060
Columbus, OH 43215
Phone/Fax 216-230-9041
breese@flannerygeorgalis.com

*Counsel for Plaintiffs AAID and Dr. Kusek*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
American Academy of Implaint Dentistry and Edward R. Kusek, DDS

**(b)** County of Residence of First Listed Plaintiff   Cook
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See Attachment.

## DEFENDANTS
Marty Jackley, in his official capacity as the South Dakota Attorney General, et al. (See Attachment)

County of Residence of First Listed Defendant   Hughes
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
Unconstitutional restrictions on professional advertising

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE 7/20/2023

SIGNATURE OF ATTORNEY OF RECORD
*Raff Arsons*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## Civil Cover Sheet Attachment

### Plaintiffs

American Academy Of Implant Dentistry,
Edward R. Kusek, DDS

### Plaintiffs' Counsel

Ronald A. Parsons Jr.
Johnson Janklow & Abdallah
101 South Main Ave., Suite 100
Sioux Falls, SD 57104
Phone: (605)338-4304
ron@janklowabdallah.com

Justin C. Withrow (*pro hac pending*)
FLANNERY | GEORGALIS LLC
1375 East Ninth St., 30th Floor
Cleveland, OH 44114
Phone/Fax: (216) 367-2120
jwithrow@flannerygeorgalis.com

Colin J. Callahan (*pro hac pending*)
FLANNERY | GEORGALIS LLC
707 Grant Street, Ste. 2750
Pittsburgh, PA 15219
Phone/Fax: 412-339-1336
ccallahan@flannerygeorgalis.com

W. Benjamin Reese (*pro hac pending*)
FLANNERY | GEORGALIS LLC
175 South Third Street, Ste. 1060
Columbus, OH 43215
Phone/Fax 216-230-9041
breese@flannerygeorgalis.com

### Defendants

In their official capacities:

Marty Jackley, South Dakota Attorney General

Nick Renemans, DDS, President of the South Dakota State Board of Dentistry

Scott Van Dam, DDS, Vice President of the South Dakota State Board of Dentistry

Zona Hornstra, RDH, Treasurer and Secretary of the South Dakota State Board of Dentistry

Harold Doerr, DDS
Tara Schaack, DDS
Brian Prouty, DDS
    Members,
    South Dakota Board of Dentistry

### Defendants' Counsel