UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN ACADAMEY OF IMPLANT DENTISTRY and DDS EDWARD R. KUSEK,<br><br>                    Plaintiffs,<br><br>   vs.<br><br>MARTY JACKLEY, in his official capacity as Attorney General for the State of South Dakota; DDS NICK RENEMANS, in his official capacity as the President of the South Dakota State Board of Dentistry; DDS SCOTT VAN DAM, in his official capacity as the Vice President of the South Dakota State Board of Dentistry; RDH ZONA HORNSTRA, in her official capacity as the Treasurer and Secretary of the South Dakota State Board of Dentistry; DDS HAROLD DOERR, in his official capacity as a member of the South Dakota State Board of Dentistry; DDS TARA SCHAACK, in her official capacity as a member of the South Dakota State Board of Dentistry; DDS BRIAN PROUTY, in his official capacity as a member of the South Dakota State Board of Dentistry,<br><br>                    Defendants. | 4:23-CV-O4113-KES<br><br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiffs, American Academy of Implant Dentistry (AAID) and Dr.

Edward Kusek, challenge the constitutionality of South Dakota Administrative

Rule 20:43:04:01 under the First and Fourteenth Amendments to the United

States Constitution. Docket 1. Plaintiffs move for summary judgment,

contending that the Rule impermissibly restricts truthful commercial speech by prohibiting certain dentists from advertising themselves as "specialists" or otherwise implying specialty status unless they have completed a qualifying postdoctoral residency. Docket 42; Docket 45. Defendants, Attorney General Marty Jackley and the members of the South Dakota Board of Dentistry, also move for summary judgment, asserting that the Rule permissibly regulates misleading commercial speech and satisfies the requirements of *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). Docket 47; Docket 48. The parties' motions are fully briefed. The court issues the following order.

## BACKGROUND

The following account sets out the material facts drawn from the parties' statements of undisputed material facts and their respective responses. The undisputed material facts relevant to the parties' motions for summary judgment are as follows:

The South Dakota Board of Dentistry (the Board) is an agency within South Dakota's Department of Health. Docket 55 ¶ 1. Its stated mission is "to protect the health and safety of the consumer public from the services of unqualified dentists, dental hygienists, and registered dental assistants by licensure of qualified persons, enforcement of the statutes, rules and regulations governing the practice of dentistry." Docket 46-6. The Board licenses and registers dental professionals and investigates and resolves complaints against those within its jurisdiction. Docket 55 ¶¶ 3-4. The Board

2

consists of seven members—five dentists, one dental hygienist, and one layperson—each appointed to a three-year term and eligible to serve no more than three terms. *Id.* ¶¶ 5-6.

AAID is a professional organization that supports and educates dentists who perform dental implant procedures. Docket 46-3 ¶ 4. AAID members who satisfy specified educational, experiential, and examination requirements may earn credentials issued by AAID and by the American Board of Oral Implantology/Implant Dentistry (ABOI/ID). *Id.* ¶¶ 8, 11. ABOI/ID is an independent specialty-certifying organization that is neither controlled by the American Dental Association (ADA) nor affiliated with any other professional organization, and it is accredited by the American Board of Dental Specialties. *See id.* ¶ 10. Dentists who successfully complete ABOI/ID's certification process earn Diplomate status, the organization's highest credential. *See* Docket 46-4 at 14.

Dr. Kusek is an ABOI/ID Diplomate who has practiced dentistry in Sioux Falls for approximately 40 years. Docket 55 ¶¶ 15-16. He is a member and former president of AAID and performs dental implant procedures as part of his practice. *Id.* ¶¶ 15, 17. For financial and family reasons, Dr. Kusek did not complete a postdoctoral residency after graduating from dental school. *Id.* ¶ 18.

In 2022, the Board began revising its rule governing advertising by dentists. Docket 46-5 at 7-8. At that time, South Dakota's advertising rule permitted a dentist to advertise as a "specialist" only in specialties recognized by the ADA. *See* Docket 55 ¶ 53; S.D. Admin. R. 20:43:04:01 (2011). During

3

the rulemaking process, the Board considered litigation challenging specialty-advertising regulations in other states while evaluating possible revisions to South Dakota's advertising rule. Docket 63-1 at 4. The Board thereafter undertook an extensive process to revise South Dakota's advertising rule. *Id.* at 3-4. Over the course of the following year, the Board released multiple draft rules, solicited stakeholder comments, revised the proposal in response to that feedback, and discussed successive drafts during public Board meetings before initiating formal rulemaking. *Id.*; *see* Docket 63-8; Docket 63-12.

The Board initially proposed a rule that would have permitted dentists to advertise as specialists in fields not recognized by the ADA if the advertisement included a disclaimer stating that the specialty was "not recognized as a specialty area by the American Dental Association." Docket 46-7 at 5; Docket 63-12 at 22. Under that proposal, an ABOI/ID Diplomate could have advertised as a specialist in implantology provided the required disclaimer accompanied the advertisement. Docket 46-7 at 5. During the rulemaking process, however, the Board continued revising the proposal in response to stakeholder feedback and ultimately adopted a different approach. *See* Docket 63-1 at 3; Docket 46-5 at 26; *see* Docket 63-8. A Board representative later testified that the proposed disclaimer was reviewed, but the Board received negative feedback and the proposal "didn't seem to please the stakeholders." Docket 46-5 at 26. Further, during the June 2, 2023 public hearing, the Board's general counsel explained that, rather than continuing to rely on ADA specialty recognition, the proposed rule would instead define specialty advertising by referring to

4

completion of a qualifying two-year postdoctoral residency program. *See* Docket 63-1 at 4.

During the rulemaking process, the Board also received public comments and considered survey evidence regarding consumer perceptions of specialty advertising. *See* Docket 55 ¶ 61. In a written presentation submitted during the June 2, 2023 public hearing, the survey author explained that the research "examines among adult residents of South Dakota the impact of the designation 'specialist' on perceptions of dentists who include the word in ads promoting their services." Docket 63-1 at 58. The Board also considered surveys conducted in South Dakota and Ohio concerning consumer responses to the designation "specialist." *Id.* at 9-12. The South Dakota survey asked 400 respondents whether they would believe that a dentist advertising as an implant specialist had completed an accredited residency program in implant dentistry in addition to dental school. Docket 55 ¶ 42. Seventy-nine percent responded "Yes," eleven percent responded "No," and ten percent responded "Do not know." *Id.* ¶¶ 43, 45. The Board also considered a similar survey conducted in Ohio, in which, when asked the same question, seventy-eight percent of respondents answered "Yes," fourteen percent answered "No," and eight percent answered "Do not know." *Id.* ¶ 50.

At the closing of the public hearing on June 2, 2023, the Board adopted the current version of South Dakota Administrative Rule 20:43:04:01, which remains in effect. Docket 55 ¶ 62. Under the Rule:

5

> A dentist may advertise or represent oneself as a specialist or use the terms specializes, specializing, or another variation of either term, for any specialty in which the dentist has completed a post-doctoral program that:
>
> > (1) Consists of at least two full-time years; and
> > (2) Is accredited by an accreditation agency recognized by the United States Department of Education or is administered by a dental school accredited by an organization recognized by the United States Department of Education.
>
> A dentist advertising or representing oneself as a specialist or using the term specializes, specializing, or another variation of either term, must avoid any implication that another dentist associated with the same practice or entity is a specialist, unless that dentist meets the requirements of this section.
>
> Declaration to the public of a specialty practice or the inference of specialty status not authorized by this section is engaging in false or misleading advertising.

S.D. Admin. R. 20:43:04:01 (2023).

On July 20, 2023, plaintiffs commenced this action alleging that the Rule violates the First and Fourteenth Amendments as applied to AAID dentists who have attained ABOI/ID Diplomate status but have not completed a qualifying postdoctoral residency program. Docket 1 at 17-20. Plaintiffs seek declaratory and injunctive relief. *Id.* at 20-21. Plaintiffs have moved for summary judgment on their claims. Docket 42. The Board opposes plaintiffs' motion, Docket 66, and has filed a cross-motion for summary judgment, Docket 47. Plaintiffs oppose defendants' motion. Docket 62.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may satisfy this

6

burden by presenting evidence that there is no genuine dispute of material fact or by showing that the nonmoving party has failed to present evidence supporting an element of its claim on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must identify the portions of the record demonstrating the absence of a genuine issue for trial. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

Once the moving party has met its burden, the nonmoving party may not rest on mere allegations or denials but must identify specific facts in the record demonstrating a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). A factual dispute is genuine if a reasonable jury could return a verdict for either party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986), and it is material if it might affect the outcome of the suit under the governing law, *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022).

In considering a motion for summary judgment, the court generally views the facts and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court considers each motion separately, viewing the record in the light most favorable to the nonmoving party with respect to each motion. *Thompson-Harbach v. USAA Fed. Savings Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019).

## DISCUSSION

### I.      Plaintiffs' Motion for Summary Judgment

#### A.      First Amendment Claim

The First Amendment provides that "Congress shall make no law . . .
abridging the freedom of speech." U.S. Const. amend. I. Through the
Fourteenth Amendment, that protection applies to state and local governments.
*Gitlow v. New York*, 268 U.S. 652, 666 (1925).

Commercial speech, however, is accorded a lesser protection than other
forms of constitutionally protected expression. *Cent. Hudson Gas & Elec. Corp.
v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980). Even so, commercial speech is
protected from "unwarranted governmental regulation." *Id.* at 561. Restrictions
on commercial speech are therefore subject to intermediate scrutiny. *See 1-
800-411-Pain Referral Servs., LLC v. Otto*, 744 F.3d 1045, 1055 (8th Cir. 2014).

When evaluating a restriction on commercial speech, the court first
considers whether the regulation is content based, speaker based, or both. *Id.*
at 1054. A law is content based if it applies to speech because of the topic
discussed or the idea or message expressed. *Reed v. Town of Gilbert, Ariz.*, 576
U.S. 155, 163 (2015).  A law is speaker based if it disfavors particular
speakers. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011).

Here, the court finds that South Dakota Administrative Rule 20:43:04:01
is both content based and speaker based. It is content based because it
regulates whether dentists may use particular terms—including "specialist,"
"specializes," and "specializing"—and therefore applies based on the message

8

conveyed. *See Reed*, 576 U.S. at 163. It is also speaker based because only dentists who have completed a qualifying postdoctoral residency may use those terms, while dentists who have not completed such a residency may not. *See Sorrell*, 564 U.S. at 564. Thus, the court evaluates the Rule under the four-part framework set forth in *Central Hudson*. *See 1-800-411-Pain Referral Servs.*, 774 F.3d at 1054-55.

Under *Central Hudson*, the court analyzes: (1) whether the commercial speech concerns unlawful activity or is misleading; (2) whether the government's asserted interest is substantial; (3) whether the challenged regulation directly advances that interest; and (4) whether the regulation is no more extensive than necessary to serve that interest. *Cent. Hudson*, 447 U.S. at 566. The party seeking to uphold a restriction on commercial speech bears the burden of justifying it throughout that analysis. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). The court considers each *Central Hudson* factor in turn.

### 1. Whether the Speech is Misleading or Concerns Unlawful Activity

The first *Central Hudson* factor asks whether the commercial speech is misleading or concerns unlawful activity.[1] *Cent. Hudson*, 447 U.S. at 566. Speech is inherently misleading if it "inevitably will be misleading" to consumers. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 372 (1977). Whether

---

[1] Neither party contends that plaintiffs' proposed advertising concerns unlawful activity, *see* Dockets 45 & 66, and nothing in the record suggests otherwise. Thus, the court addresses only whether the proposed use of the designation "specialist" (or otherwise implying specialty status) is misleading under the first *Central Hudson* factor.

advertising is inherently misleading may be determined from the particular content or method of advertising or from experience demonstrating that such advertising is subject to abuse. *In re R.M.J.*, 455 U.S. 191, 203 (1982). Inherently misleading advertising may be prohibited entirely. *Id.* By contrast, if the information may be presented in a manner that is not deceptive, the State may not impose an absolute prohibition on that "potentially misleading" speech. *Id.* Although the potential for deception is often greater in the context of professional advertising, restrictions on such advertising "may be no broader than reasonably necessary to prevent the deception." *Id.*

The Rule prohibits dentists from advertising or representing themselves as "specialists," using the terms "specializes" or "specializing," or otherwise implying specialty status unless they have completed a qualifying postdoctoral residency program. *See* S.D. Admin. R. 20:43:04:01 (2023). Plaintiffs contend that the Rule regulates the truthful advertisement of objectively verifiable professional credentials. *See* Docket 45 at 16-19. Defendants contend that it regulates representations of specialty status that, in the dental and medical professions, carry an established meaning tied to completion of residency training. *See* Docket 66 at 6-11. Thus, the question is whether, viewing the record in the light most favorable to defendants, defendants have demonstrated that plaintiffs' proposed advertising is inherently misleading.

The Supreme Court's plurality decision in *Peel v. Attorney Registration & Disciplinary Commission of Illinois*, 496 U.S. 91 (1990), provides the starting point. There, an attorney truthfully advertised that he was certified as a civil

10

trial specialist by the National Board of Trial Advocacy, a private certifying organization. *Id.* at 96-97. The Supreme Court held that the attorney's truthful representation of that certification was not inherently misleading merely because the certifying organization was private rather than state sanctioned. *Id.* at 108-11. Although some consumers might misunderstand the significance of the certification, the Court explained that the possibility of consumer confusion does not automatically render truthful professional advertising inherently misleading. *Id.* at 108-10. Instead, where truthful information can be presented in a manner that avoids deception, a blanket prohibition ordinarily is not justified. *Id.* at 110; *see also In re R.M.J.,* 455 U.S. at 203-04.

*Peel*, however, did not involve a state's use of the designation "specialist" as a defined legal term. Rather, the attorney advertised a truthful, objectively verifiable credential conferred by a private certifying organization. *See Peel*, 496 U.S. at 96-97. Thus, the Court had no occasion to decide whether a state may restrict a professional from representing himself as a "specialist" after adopting its own definition of specialty status. As such, although *Peel* establishes that truthful statements regarding professional certification are not inherently misleading merely because they originate from a private certifying body, it does not squarely resolve whether a dentist who has not completed a qualifying residency may nevertheless advertise as a "specialist" or otherwise imply specialty status.

Plaintiffs also rely on the Fifth Circuit's decision in *American Academy of Implant Dentistry v. Parker,* 860 F.3d 300 (5th Cir. 2017). Docket 45 at 17;

Docket 73 at 2-4. There, the Fifth Circuit invalidated a Texas rule prohibiting certain implant dentists from advertising as specialists because the State failed to demonstrate that the restriction satisfied the requirements of *Central Hudson.* 860 F.3d at 307-12. In doing so, the court rejected the State's contention that it could restrict the designation "specialist" simply because it preferred a particular definition of that term. *Id.* at 308. The Fifth Circuit further concluded that the record did not establish that the prohibited advertising was inherently misleading and observed that any potential consumer confusion could be addressed through less speech-restrictive means. *Id.* at 308, 311.

With those principles in mind and viewing the evidence in the light most favorable to defendants, the court concludes that defendants have not demonstrated that plaintiffs' proposed use of the designation "specialist" is inherently misleading. Defendants have produced ample evidence supporting their contention that consumers associate specialty status with completion of a residency. That evidence includes the views of dental professionals, medical professionals, and credentialing organizations, as well as consumer surveys conducted in South Dakota and Ohio, indicating that most respondents would expect a dentist advertising as a specialist to have completed a residency program. *See* Docket 63-6 at 5; Docket 50 ¶ 8; Docket 57 ¶¶ 6-7; Docket 53 ¶¶ 14-15; Docket 49 ¶ 13; Docket 51 ¶ 4; Docket 63-7; Docket 63-1 at 34-46, 57-68.

12

The constitutional question, however, is whether that evidence establishes that plaintiffs' proposed speech is inherently misleading. The record establishes only the possibility of consumer confusion. The evidence demonstrates that many consumers associate the designation "specialist" with completion of a residency. *See* Docket 63-1 at 34-46, 57-68. But association is not synonymous with deception. The Supreme Court has repeatedly distinguished between speech that is inherently misleading and speech that is merely potentially misleading. *See Peel*, 496 U.S. at 110; *In re R.M.J.*, 455 U.S. at 203-04. The former may be prohibited outright, while the latter generally may not if the information can be presented in a manner that avoids deception. *In re R.M.J.*, 455 U.S. at 203-04.

This conclusion is consistent with *Peel*. Although the potential misunderstanding in *Peel* differed from the facts presented here, the principle is the same: the possibility that consumers may draw an incorrect inference from truthful commercial speech does not, standing alone, justify treating the speech as inherently misleading. Rather, it demonstrates only the possibility of consumer confusion, which is the hallmark of potentially misleading, not inherently misleading, commercial speech. *See id.* at 108-09; *In re R.M.J.*, 455 U.S. at 203; *see also Ibanez v. Florida Dep't of Bus. & Pro. Regul., Bd. of Accountancy*, 512 U.S. 136, 144-45 (1994).

The same reasoning applies here. Plaintiffs do not seek to advertise credentials they do not possess. *See Peel*, 496 U.S. at 100-02; *see also Ibanez*, 512 U.S. at 142-46 (holding that the State failed to establish that the truthful

13

use of professional designations was inherently misleading). Nor do defendants dispute that ABOI/ID Diplomate status is a bona fide, objectively verifiable professional credential. Thus, to demonstrate that plaintiffs' proposed advertising is inherently misleading, defendants must establish something more than the possibility that consumers may misunderstand those truthful credentials.

The surveys indicate that many consumers associate specialty status with completion of a residency program. *See* Docket 63-1 at 46, 67. But evidence of consumer expectations is not the same as evidence that plaintiffs' proposed speech inevitably deceives consumers. Indeed, plaintiffs have introduced evidence challenging the surveys' methodology and emphasizing that the surveys did not measure respondents' independent understanding of the term "specialist." Docket 46-16 at 6, 9, 12, 14-15. Even viewing that evidence in the light most favorable to defendants, the court cannot conclude as a matter of law that plaintiffs' proposed use of the designation "specialist" is inherently misleading merely because consumers may associate specialty status with residency training.

As such, defendants have not established as a matter of law that plaintiffs' proposed use of the designation "specialist" is inherently misleading. At most, the record demonstrates the potential for consumer confusion. Under *Peel* and *In re R.M.J.*, that distinction is dispositive. Because plaintiffs' proposed advertising "also may be presented in a way that is not deceptive," it is properly characterized as potentially, rather than inherently, misleading. *In*

14

*re R.M.J.*, 455 U.S. at 203. The court therefore proceeds to analyze the remaining *Central Hudson* factors. *See Edenfield*, 507 U.S. at 768-69.

### 2.    Whether the Government's Interest is Substantial

The Supreme Court has recognized that "[s]tates have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for . . . regulating the practice of professions." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978). When a regulation restricts commercial speech, however, the state's general authority to regulate professions does not end the constitutional inquiry. Instead, the state must demonstrate that the challenged restriction serves a substantial governmental interest. *Central Hudson*, 447 U.S. at 564, 566.

Defendants assert that the Rule serves three governmental interests: protecting consumers from false or misleading advertising, protecting consumers from harms that may result from misleading advertising, and establishing uniform standards governing the use of specialty designations by dental professionals. *See* Docket 66 at 11; *see also* Docket 48 at 19. Plaintiffs contend that the Rule does not materially advance a substantial governmental interest because it regulates only the use of the designation "specialist," while leaving dentists free to perform implant procedures and advertise implant services regardless of their training or experience. Docket 45 at 22.

15

The court agrees with defendants that the governmental interests asserted in support of the Rule are substantial. Protecting consumers from misleading professional advertising and promoting the accuracy of commercial information in the marketplace are well-established governmental interests. *See Edenfield*, 507 U.S. at 769. Courts considering similar regulations governing professional advertising have likewise recognized a substantial governmental interest in protecting consumers from misleading professional advertisements and establishing standards governing the use of professional designations. *Parker*, 860 F.3d at 309; *See Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1108 (9th Cir. 2004). Thus, defendants have established the second *Central Hudson* factor.

### 3. Whether the Rule Directly Advances the Government's Asserted Interest

The third *Central Hudson* factor "concerns the relationship between the harm that underlies the State's interest and the means identified by the State to advance that interest." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001). The state "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 771. Although the state is not invariably required to produce empirical studies, it must present evidence demonstrating that the challenged restriction materially advances its asserted interests. *Id.*; *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995). Such evidence may include empirical studies, anecdotal evidence, history, consensus, or common sense. *Went For It, Inc.*, 515

16

U.S. at 628. The Supreme Court has nevertheless made clear that "mere speculation or conjecture" is insufficient. *Edenfield*, 507 U.S. at 770. Thus, where the state seeks to justify a restriction on commercial speech by asserting that the speech is misleading, it must support that conclusion with evidence rather than mere assumptions. *See id.* at 771; *see also Peel*, 496 U.S. at 111 ("The Commission's concern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment.").

Defendants have satisfied the third *Central Hudson* factor. The burden is on defendants to demonstrate not only that the asserted harm is real, but also that the challenged Rule alleviates that harm in a direct and material way. *Edenfield*, 507 U.S. at 771. The asserted harm here is consumer confusion: defendants contend that consumers understand the designation "specialist" to signify completion of a qualifying postdoctoral residency. *See* Docket 66 at 11-14. According to defendants, the Rule is directed at that asserted harm by prohibiting dentists who have not completed such a residency from advertising or representing themselves as specialists or otherwise implying specialty status. *Id.* at 14.

The record contains evidence from which the Board could reasonably conclude that the asserted harm is real. During the rulemaking process, the Board considered testimony, public comment, professional experience, and survey evidence. *See* Docket 63-6 at 5; Docket 50 ¶ 8; Docket 57 ¶¶ 6-7; Docket 53 ¶¶ 14-15; Docket 49 ¶ 13; Docket 51 ¶ 4; Docket 63-7; Docket 63-1

17

at 34-46, 57-68. Unlike cases in which the asserted harm rests on speculation or conjecture, the Board relied on evidence indicating that consumers commonly associate the designation "specialist" with completion of a qualifying residency. *See* Docket 63-1 at 2-19. The South Dakota and Ohio surveys indicated that most respondents would expect a dentist advertising as a specialist to have completed a residency program. *See id.* at 46, 67. Those survey results were consistent with the professional experience of Board members and other witnesses, who likewise testified that specialty status in dentistry and medicine is commonly associated with postdoctoral residency training. *Id.* at 4-17. The Board was entitled to rely on this combination of survey evidence, professional experience, and public comment in concluding that consumer confusion was a genuine concern. Although plaintiffs challenge the methodology and weight of that evidence, *see* Docket 73 at 3, the Board was not required to produce exhaustive empirical proof. Rather, it was required to present evidence demonstrating that the asserted harm was real and that the Rule would alleviate that harm to a material degree. *Edenfield*, 507 U.S. at 770-71; *Went For It, Inc.*, 515 U.S. at 628.

Plaintiffs assert that defendants have narrowed the Rule's justification during this litigation. Plaintiffs contend that the Board previously referenced patient safety and the potential for physical harm during the rulemaking process but now principally justifies the Rule as a means of preventing consumer deception in professional advertising. *See* Docket 45 at 23. But the record does not support plaintiffs' characterization. The Board's concern

regarding consumer confusion was not developed for purposes of this litigation but was indeed part of the rationale considered during the rulemaking process.[2] *See* Docket 63-1 at 4 (the Board's general counsel testifying during the public rulemaking hearing that the proposed Rule "directly advances the substantial governmental interest of protecting the public from misleading advertising and is no more extensive than it is necessary to serve that interest.").

In addition, the Rule does not rest solely on unsupported assumptions regarding consumer understanding. As explained above, the court concluded only that plaintiffs' proposed advertising is potentially—not inherently—misleading. That conclusion, however, does not foreclose the State from regulating such speech if it demonstrates that the restriction materially advances a substantial governmental interest. Here, the Board produced sufficient evidence that consumers may understand the designation "specialist" to signify completion of a qualifying postdoctoral residency. *See id.* at 46, 67. If consumers attach that meaning to the designation, limiting its use to dentists

---

[2] Even accepting, for purposes of argument, plaintiffs' assertion that the Board initially referenced patient safety and the potential for physical harm during the rulemaking process, that premise does not alter the analysis. At most, any concern regarding patient safety is derivative of the Board's principal asserted interest in preventing consumer deception in professional advertising. If consumers are misled regarding a dentist's qualifications, any resulting impact on patient care would stem from that initial deception. Thus, whether the Board characterizes the ultimate consequence as consumer confusion or the possibility of downstream physical harm, the Rule advances the same underlying governmental interest by reducing the likelihood that consumers will attribute residency training to dentists who have not completed such training.

who satisfy the Rule's residency requirement reduces the likelihood that consumers will mistakenly attribute residency training to dentists who have not completed such training when selecting a dental provider. In that respect, the Rule directly addresses the precise source of consumer confusion identified by the Board and materially advances the State's asserted interest in preventing misleading professional advertising.

As such, defendants have demonstrated that the Rule directly advances the State's asserted interest in preventing consumer confusion in professional advertising.

### 4.      Whether the Rule Is No More Extensive Than Necessary

The fourth *Central Hudson* factor asks whether the challenged restriction is "not more extensive than is necessary to serve" the asserted governmental interest. *Cent. Hudson*, 447 U.S. at 566. The state need not employ the least restrictive means or establish a perfect fit between its ends and the means chosen to achieve them. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). But there must be a "reasonable fit" between the legislature's ends and the means chosen to accomplish those ends. *Id.* The fit must be "carefully calculated" to achieve the asserted objective, and the state bears the burden of affirmatively establishing that reasonable fit. *Id.* Although "numerous and obvious less-burdensome alternatives to the restriction on commercial speech" may exist, the availability of such alternatives remains "a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13

20

(1993). Moreover, where the government's interest can be served by a more limited restriction on commercial speech, "the excessive restrictions cannot survive." *Cent. Hudson*, 447 U.S. at 564. Thus, although the state need not adopt the least restrictive means, it must demonstrate that its chosen restriction is reasonably tailored to serve its asserted interest.

Viewing the record in the light most favorable to defendants, plaintiffs are entitled to judgment as a matter of law because defendants have not demonstrated that the Rule is reasonably tailored to serve the Board's asserted interest in preventing consumer confusion. Although the Rule regulates only a narrow category of speech—the use of the designation "specialist" and related terms by dentists who have not completed a qualifying postdoctoral residency— that alone does not establish the reasonable fit required by *Fox*.

Defendants principally contend that the Rule is narrowly tailored because it prohibits only the use of the designation "specialist" while leaving plaintiffs free to advertise their AAID membership, ABOI/ID Diplomate status, implant services, and other objectively verifiable credentials. Docket 66 at 14. That argument has some force. The Rule burdens substantially less speech than an outright prohibition on advertising implant credentials or professional experience. But identifying the limited scope of the restriction does not, by itself, establish the reasonable fit that *Fox* requires. Defendants must affirmatively demonstrate why prohibiting plaintiffs from using the designation "specialist" is reasonably necessary to prevent consumer confusion. Defendants tailoring analysis consists largely of the assertion that the Rule regulates only

one word. *See id.* But identifying the speech the Rule prohibits is not the same as demonstrating why prohibiting that speech represents the "reasonable fit" required by *Fox*. *See Fox*, 492 U.S. at 480. Defendants provide no meaningful explanation showing that the Board's chosen means were "carefully calculated" to achieve its asserted objective instead of materially less speech-restrictive alternatives that the Board itself considered. *See id.*

The Board's own rulemaking history illustrates that deficiency. During the rulemaking process, the Board initially proposed a disclosure-based approach that would have permitted dentists to advertise specialty status in non-ADA-recognized fields if accompanied by a disclaimer stating that the specialty was "not recognized as a specialty area by the American Dental Association." *See* Docket 46-7 at 5. The Board later abandoned that proposal, Docket 43 ¶ 32, and instead adopted the categorical residency-based restriction now before the court, Docket 55 ¶ 62. That history demonstrates that the Board itself briefly considered a materially less speech-restrictive means of addressing the very consumer confusion it now identifies. Yet the record shows only that the Board "reviewed" the disclaimer draft and that "[t]he feedback received was not positive" and the proposal "didn't seem to please the stakeholders." Docket 46-5 at 26. The rulemaking record does not explain why the Board concluded that a categorical prohibition, rather than a disclosure-based approach, represented the reasonable fit required by *Fox*. Similarly, defendants fail to explain why South Dakota's existing prohibition on false or misleading advertising is insufficient to address advertisements that actually

22

mislead consumers on a case-by-case basis. *See* S.D. Admin R. 36-6A-59.1(13). Neither the rulemaking record nor defendants' briefing demonstrates that, in adopting the Rule at issue, the Board "carefully calculated" its chosen means to achieve its asserted objective. *See Fox*, 492 U.S. at 480.

The Rule's tailoring is further called into question by both its breadth and its limits. On one hand, the Rule is overinclusive because it broadly prohibits dentists who have not completed a qualifying residency from using the designation "specialist," regardless of their experience, professional accomplishments, or objectively verifiable credentials. Thus, under the Rule, a dentist such as Dr. Kusek—who has practiced for approximately 40 years, earned ABOI/ID Diplomate status, and placed thousands of dental implants— may not advertise as a specialist, while a dentist who has only recently completed a qualifying residency may do so. Defendants respond that residency, rather than professional experience or continuing education, has traditionally defined specialty status "in the medical context." Docket 66 at 15. Even assuming residency provides an appropriate benchmark for defining specialty status, defendants still must demonstrate why prohibiting all non-residency dentists from using the designation "specialist" is reasonably necessary to prevent consumer confusion. They have not done so.

On the other hand, the Rule is also underinclusive. Defendants acknowledge that plaintiffs remain free to advertise their AAID membership, ABOI/ID Diplomate status, and other designations. *Id.* at 14. Yet defendants have not explained why prohibiting only the use of the designation "specialist,"

23

while permitting plaintiffs to advertise the credentials that allegedly give rise to the same consumer expectations, represents the reasonable fit required by *Fox*. *See id.* at 14-15. Because defendants bear the burden of establishing that reasonable fit, the court cannot uphold the Rule based on justifications that defendants themselves have not offered. *See Fox*, 492 U.S. at 480; *Edenfield*, 507 U.S. at 770.

The Supreme Court's commercial speech jurisprudence reinforces this conclusion. Where commercial speech is only potentially misleading, the Court has repeatedly indicated that the preferred remedy is disclosure rather than suppression. *See Peel*, 496 U.S. at 110 (plurality opinion); *id.* at 116 (Marshall, J. concurring in the Judgment) ("[T]he remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation." (internal quotation marks omitted)); *see also Bates v. State Bar of Arizona*, 433 U.S. at 384 (observing that states may require "warning or disclaimer[s]" to ensure consumers are not misled). Similarly, in *Borgner v. Brooks*, the Eleventh Circuit upheld a disclosure requirement requiring dentists, who advertise non-ADA-recognized credentials to disclose that those credentials were not recognized by the ADA or the state dental board. 284 F.3d 1204, 1215-16 (11th Cir. 2002). Although those decisions do not compel South Dakota to adopt a disclaimer regime, they illustrate that disclosure-based alternatives are constitutionally significant where the government seeks to restrict only potentially misleading commercial speech. Defendants have not demonstrated why those alternatives would fail here. The court's conclusion is

also consistent with the Fifth Circuit's decision in *Parker*, which held that Texas failed to demonstrate the requisite reasonable fit where it prohibited similar specialty advertising without adequately establishing that the restriction was appropriately tailored to its asserted interests. *See* 860 F.3d at 311-12.

Ultimately, because defendants failed to show that the plaintiffs' proposed advertising is inherently misleading, they were required to satisfy the remaining *Central Hudson* factors. They identified a substantial governmental interest and demonstrated that the Rule materially advances that interest. They did not, however, demonstrate that the Rule is no more extensive than necessary to serve it. That deficiency is fatal under *Central Hudson*. Defendants have not explained why this particular restriction, rather than a less speech-restrictive alternative, was necessary to address the Board's asserted concern about consumer confusion. As the Supreme Court explained in *Thompson v. Western States Medical Center*, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." 535 U.S. 357, 373 (2002). And "if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Id.* at 371. On this record, defendants have not carried their burden. Thus, the Rule is more extensive than necessary to serve the Board's asserted interest and is therefore unconstitutional as applied to plaintiffs.

25

### B.      Fourteenth Amendment Claims

Plaintiffs also contend that the Rule violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Docket 45 at 27. They argue that the Rule irrationally distinguishes between residency-trained dentists and ABOI/ID Diplomates, lacks a rational relationship to any legitimate governmental interest, and instead serves only to protect a favored group of dentists from economic competition. *Id.* at 28-29. Plaintiffs therefore seek summary judgment on their Fourteenth Amendment claims in addition to their First Amendment claim. *Id.* at 29.

Because the court concludes that the Rule violates the First Amendment as applied to plaintiffs, plaintiffs are entitled to the declaratory and injunctive relief they seek. The court therefore need not address plaintiffs' alternative claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## II.    Defendants' Motion for Summary Judgment

Similarly, because the court concludes that plaintiffs are entitled to summary judgment on their First Amendment claim, defendants are not entitled to judgment as a matter of law. Thus, defendants' motion for summary judgment is denied.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted as to their First Amendment claim. Because that determination affords plaintiffs the declaratory and injunctive relief they seek, the court does not

26

reach plaintiffs' alternative claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Defendants' cross-motion for summary judgment is denied. Thus, it is ORDERED that:

1) Plaintiffs' motion for summary judgment (Docket 42) is granted on their First Amendment claim;

2) Defendants' motion for summary judgment (Docket 47) is denied;

3) South Dakota Administrative Rule 20:43:04:01 is unconstitutional as applied to plaintiffs under the First Amendment;

4) Defendants are permanently enjoined from enforcing South Dakota Administrative Rule 20:43:04:01 against plaintiffs to the extent it prohibits them from advertising as specialists or using the terms "specialist" or "specialty" to describe an area of dental practice not recognized as a specialty under the American Dental Association, or otherwise enforcing any provision of South Dakota law inconsistent with this opinion.

Dated July 20, 2026.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE